[Crim. No. 297.   Fourth Appellate District.—June 15, 1936.]

THE PEOPLE, Respondent, v. JAMES HALL, Appellant.

W. W. B. Seymour and Eugene R. Dukette for Appellant.

U. S. Webb, Attorney-General, and John O. Palstine, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The defendant was convicted of murder in the first degree, with a recommendation of life imprisonment, and has appealed from the judgment and from an order denying his motion for a new trial or for a reduction of the degree of the crime.

About 1 o'clock A. M. on the morning of January 17, 1936, the appellant killed one James Washington by stabbing him with a long-bladed knife in front of a cafe and dance hall in the city of San Diego. Both were negroes and this cafe was frequented almost exclusively by negroes. The appellant and his fiancée came to this cafe about 12:30 that night where they occupied a booth and danced a time or two. The deceased, whom the appellant had never seen before, came up and asked the girl to dance with him. The appellant apparently objected and some argument or altercation ensued. While no blows were struck, the appellant was seen to pass an open knife from one pocket to another. An officer employed by the cafe intervened and ordered the parties off the dance floor. They separated and the appellant and his girl went to a booth and sat down. Some five or ten minutes later they left the cafe. As they went out of the door they saw a man named Turner whom they knew, standing near a telephone pole at the curb, slightly to their right as they passed out. They went over and talked with him there for about five minutes and then started to walk along the sidewalk past the cafe door on their way home, with Turner following just behind them. The girl was walking on the inside with the appellant nearer the curb. As they reached a point opposite the door they saw the deceased with his overcoat on standing just to the left of the door as one comes out of the building. The appellant pushed the girl back with his left hand and approached the deceased. Some sort of scuffle or fight then took place.

Almost immediately the appellant knocked the deceased through the plate glass window of the cafe, breaking the glass. Shortly after the deceased got out of the window he was down on the sidewalk with the appellant striking him. When the window was broken a number of people, including a brother of the deceased, rushed out of the cafe. There is evidence that while the appellant was striking the deceased he had a knife in his hand. Some of the witnesses testified that they did not see a knife, saying the blows were struck too fast. At some point while this was going on the deceased's brother went to his assistance and the appellant chased him into the street, inflicting two cuts on his hands, the scars of which were shown to the jury. While the appellant was chasing the brother the deceased staggered into the street,

where he collapsed and died. An autopsy on the body of the deceased showed a three-inch laceration in the mid-area of the left biceps muscle; a stab wound $1\frac{1}{4}$ inches wide and 4 inches deep on the left shoulder; a $1\frac{1}{4}$-inch stab wound 5 inches deep in the region of the collar bone on the left shoulder; a $2\frac{1}{2}$-inch stab wound 5 inches deep at the left of the second rib on the right; and a $2\frac{1}{2}$-inch stab wound 5 inches deep through the back, approximately opposite the upper mid-region of the chest. A physician testified that any one of the last three of these wounds "would allow for almost certain death unless surgical intervention was very fortunate".

■ The only point raised is that the evidence is not sufficient to support the verdict, it being urged that it conclusively appears that the appellant acted in self-defense and, if not, that the evidence is insufficient to show the premeditation necessary to support a verdict of murder in the first degree.

The appellant bases his claim of self-defense upon a portion of his testimony to the effect that the deceased approached him as they passed the door and said: "I'm not through with you"; that he pushed the girl to one side and started backing away; that the deceased kept coming and struck him with his left hand while keeping his right hand in his overcoat pocket; that he did not use his knife until after the deceased got out of the window, at which time the deceased's brother entered the fray; that although the deceased was on the sidewalk he had hold of the appellant's pant-leg; and that he kept trying to pull himself loose in order to escape and at the same time tried to ward off the attack of the brother.

The appellant's evidence, standing alone, presents a doubtful case of self-defense and when all of the evidence is considered it cannot be said that such a situation conclusively appears. After reading the entire record we are unable to see how the jury could reasonably have accepted that theory. There is ample evidence that the appellant produced and used a knife before the brother appeared on the scene and that he was never in danger at any time. As one witness expressed it, there was no fight because the deceased never had a chance. The appellant himself testified that the deceased struck only with his left hand and had his right hand in his overcoat pocket at all times. One witness testified as to the attack on the deceased with a knife in a manner which indicates that the same was actually brutal. While an attempt

is made to disparage the testimony of this witness the jury could well have believed him. The nature of the wounds on the body of the deceased is not without a bearing upon the theory of self-defense. Not only are they out of all proportion to the attack which the appellant says was made upon him, but several of them were apparently made from above and one of them was in the middle of the deceased's back. The evidence, as a whole, strongly indicates that the wounds were inflicted before the brother of the deceased appeared on the scene and that while the appellant chased the brother into the street he was not fighting both of them at the same time. Some of the evidence, even from the appellant's own witnesses, indicates that the appellant was the aggressor and that the deceased did nothing to provoke the attack. Turner testified that when they started on after talking at the telephone pole for about five minutes, the deceased was standing just outside the door, that he did not hear either of the men say anything, and that the deceased did not have hold of the appellant at any time. This witness was within a few feet of the parties at the time the affair started and the girl, who was between the appellant and the deceased, testified that prior to the time the appellant knocked the deceased through the window she did not hear the deceased say anything to the appellant, did not see the deceased make any motion toward him, and did not see the deceased make any move to strike at him. She further testified that she saw the appellant striking at the deceased, that he got the deceased down on the sidewalk and was on top of him striking at him, and that the brother did not interfere in the matter until after the deceased was down on the sidewalk and the appellant was striking at him. The most that can be said of the matters relied upon by the appellant is that they create a conflict in the evidence.

What has already been said is a sufficient answer to the contention that there was no showing of premeditation, deliberation or lying in wait. Whether or not the appellant waited outside with the intention of attacking the deceased there is ample evidence that he did attack him without provocation some fifteen or twenty minutes after their first altercation had ended, and the nature of the wounds inflicted is most suggestive as to his intention. It is well settled that there need be no appreciable space of time between the intention to kill and the act of killing. The matter of the degree of

the crime was submitted to the jury under appropriate instructions and the verdict is sufficiently supported by the evidence.

The judgment and the order denying the motion for a new trial or for a reduction in the degree of the offense are affirmed.

Marks, J., and Turrentine, J., *pro tem.*, concurred.